## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | |
| INELCONT CORP., | CASE NO. 10-11989 EAG |
| DEBTOR. | CHAPTER 7 |
| NOREEN WISCOVITCH RENTAS,<br>Trustee for the Estate of INELCONT, CORP.,<br>PLAINTIFF, | ADV. PROCEEDING NO. 13-00026 |
| v. | |
| DEPARTMENT OF AGRICULTURE and<br>ADMINISTRACIÓN PARA EL DESARROLLO<br>DE EMPRESAS AGROPECUARIAS,<br>DEFENDANT. | FILED & ENTERED ON 09/27/2016 |

## OPINION AND ORDER

The adversary proceeding of caption is an action commenced by the chapter 7 trustee of the bankruptcy estate of debtor Inelcont Corporation for the turnover of property under section 542 of the Bankruptcy Code.[1]  Initially the trustee sued the Puerto Rico Rural Development Corporation (the "RDC").  [Adv. Docket No. 1.]  Subsequently the trustee amended the complaint because of a change in local law to substitute as defendants the Puerto

---

[1]/Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended.  All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure.  All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico.  And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

Rico Department of Agriculture ("Agriculture") and the Agricultural Enterprises Development Administration (the "AEDA"[2]). [Adv. Dkt No. 6.]

Agriculture is moving the court to enter summary judgment dismissing the trustee's complaint. [Adv. Dkt Nos. 92 & 93.] After Agriculture moved for summary judgment, the trustee moved to amend the complaint. [Adv. Dkt Nos. 97 & 98.] Without resolving whether to grant leave to amend the complaint, the court ordered the trustee to state her position as to Agriculture's motion for summary judgment. [Adv. Dkt No. 103.] The AEDA then opposed the motion to amend the complaint and moved for dismissal of the complaint.[3] [Adv. Dkt No. 107.]

For the reasons stated below, the court denies the motions for summary judgment and to dismiss filed by Agriculture and the AEDA, respectively, and grants the trustee's motion to amend the complaint.

## I. JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

---

[2]/In Spanish, the Administración para el Desarrollo de Empresas Agropecuarias.

[3]/ Although the AEDA's motions is entitled a motion to dismiss, it asks the court to consider matters outside the pleadings. Under Bankruptcy Rule 7012(b), which incorporates Rule 12(b)(6), the court may not consider documents outside the four corners of the complaint to resolve a Rule 12(b)(6) motion without converting the motion into a motion for summary judgment. See, Fed.R.Civ.P. 12(d). As such, the court will treat the motion filed by the AEDA as a motion for summary judgment.

## II. PROCEDURAL BACKGROUND

The debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on December 23, 2010. [Bankr. Dkt. No. 1.] On February 8, 2013, the trustee commenced the adversary proceeding of caption against the RDC. [Bankr. Dkt. No. 35; Adv. Dkt. No. 1.] On April 25, 2013, the trustee moved to amend the complaint, naming as defendants Agriculture and the AEDA. [Adv. Dkt. No. 6.] On June 13, 2014 and August 28, 2014, the AEDA and Agriculture filed their respective answers to the complaint. [Adv. Dkt. Nos. 60 & 74.]

On June 25, 2015, Agriculture moved for summary judgment . [Adv. Dkt. Nos. 92 & 93.] On July 7, 2015, the trustee moved to amend the complaint and requested the issuance of new summons. [Adv. Dkt. No. 97 & 98.] On August 31, 2015, the AEDA opposed the motion to amend the complaint and moved to dismiss pursuant to Rule 12(b)(6). [Adv. Dkt. No. 107.] On September 5, 2015, the trustee replied to Agriculture's request for summary judgment. [Adv. Dkt. No. 108 & 109.]

On January 26, 2016, Agriculture and the trustee filed certified translations to the exhibits submitted in support of their respective motions. [Adv. Dkt. Nos. 114 & 115.] On May 31, 2016, Agriculture filed its position as to the reply filed by the trustee. [Adv. Dkt. No. 125.] And on the same date, Agriculture filed a motion to join AEDA's opposition to the trustee's motion to amend the complaint. [Adv. Dkt. No. 126.]

## III. UNCONTESTED FACTS

The following facts are uncontested pursuant to Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rules 9014(c) and 7056 and Local Bankruptcy Rules 1001-1(b) and (d):

3

On August 15, 2008, the debtor executed a contract with the RDC for the construction of a basketball court and the purchase and installation of a sign at the Calichosa Sector of the Municipality of Isabela, Puerto Rico. [Agriculture's Statement of Proposed Facts ("SUF") at ¶ 1, Adv. Dkt. No. 93; Trustee's Reply at p. 1, Adv. Dkt. No. 109; First Clause of Construction Agreement, Exhibit 1, Adv. Dkt. No. 93; Certified Translation, Adv. Dkt No. 114-1.] As per the agreement, the RDC was part of Agriculture at the time. [Construction Agreement at p. 1, Exhibit 1, Adv. Dkt. No. 93; Certified Translation at p. 1, Adv. Dkt No. 114-1.] The RDC agreed to pay the debtor a total of $165,214.00 upon the completion of the services contracted: 90% for work done properly and certified, and the remaining 10% if the work did not show any deficiency within 30 days after it was finished.  [Agriculture's SUF at ¶ 2, Adv. Dkt. No. 93; Trustee's Reply at p. 1, Adv. Dkt. No. 109; Clauses Sixth and Seven of Construction Agreement, Exhibit 1, Adv. Dkt. No. 93; Certified Translation, Adv. Dkt No. 114-1.] And, under the agreement, the debtor had 240 days to finish the project and deliver it to the RDC.  [Clause Eight of the Construction Agreement, Exhibit 1, Adv. Dkt. No. 93; Certified Translation, Adv. Dkt No. 114-1.]

The contract provided for the payment of invoices for services only after being rendered and subject to the RDC's process of certification and recommendation for approval of payment.  [Agriculture's SUF at ¶ 3, Adv. Dkt. No. 93; Trustee's Reply at p. 2, Adv. Dkt. No. 109; Fifth Clause of Construction Agreement, Exhibit 1, Adv. Dkt. No. 93; Certified Translation, Adv. Dkt No. 114-1.]  The contract also made the debtor responsible for any part of the work not certified as satisfactory. [Fifth Clause of Construction Agreement, Exhibit 1, Adv. Dkt. No. 93; Certified Translation, Adv. Dkt No. 114-1.]

In order to carry out the construction work, the debtor agreed to obtain the mandatory insurance required by law or regulation, a liability policy, and property insurance from an insurance company authorized to operate in Puerto Rico. [Tenth Clause of Construction Agreement, Exhibit 1, Adv. Dkt. No. 93; Certified Translation Adv. Dkt No. 114-1.] The debtor was also required to submit to the RDC copies of the policies required under the agreement. [Thirteen Clause of Construction Agreement, Exhibit 1, Adv. Dkt. No. 93; Certified Translation, Adv. Dkt No. 114-1.]

The debtor, through its representative Armando González Santini, delivered to the trustee at its 341 meeting an invoice addressed to the RDC dated September 11, 2008 for $20,114.00, less the 10%, for a total of $18,102.60 for work described as "constructing a basketball court in the Llanadas Ward, Calichosa Sector, in Isabela, P.R." [Agriculture's SUF at ¶ 6, Adv. Dkt. No. 93; Trustee's Reply at p. 2, Adv. Dkt. No. 109; Invoice, Adv. Dkt. No. 93-3; Certified Translation at Adv. Dkt. No. 114-1. ]

The debtor admitted in its answer to a request for admissions that it did not provide to the RDC and/or the Agriculture with the invoice any documentation or evidence of the work performed and subject to payment by the RDC. [Request for Admissions at ¶ 3(e) and its answer, Adv. Dkt. No. 93-2.] And, that it neither performed any construction work nor provided any materials to the defendants for the construction of the basketball court. [Request for Admissions at ¶ 1(b) and its answer, Adv. Dkt. No. 93-2.] Also, that no representative from the RDC or Agriculture certified the information or description in the invoice. [Request for Admissions at ¶ 3(f) & (g) and its answer, Adv. Dkt. No. 93-2.] The debtor also admitted that it was its sole responsibility to obtain mandatory insurance, public liability insurance, workers'

5

compensation insurance with the State Insurance Fund Corporation, performance and payment bonds, patents, and natural resources and permits and licenses and to pay municipal taxes. [Request for Admissions at ¶ 3(a),(i) & (j) and its answer, Adv. Dkt. No. 93-2.] Rather, the invoice was on account of the insurance policies, municipal taxes, and bonds required by the RDC in order for the debtor to comply with the agreement. [Answer to Defendant's set of Interrogatories at ¶ 4, Adv. Dkt. No. 109-5.]

### IV. SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well-known. Pursuant to Rule 56, made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment. McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic

dispute." Id. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. Id. An issue is "genuine" if it could be resolved in favor of either party. A fact is "material" if it is potentially outcome-determinative. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

## V. APPLICABLE LAW AND DISCUSSION

The filing of a chapter 7 case automatically creates a bankruptcy estate subject to administration by a trustee. 11 U.S.C. § 541(a), 704(a). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.

§ 541(a)(1). Section 542 requires all entities in possession, custody or control of any property of the estate that the trustee may use, sell, or lease to turn over said property to the trustee at the commencement of the case. 11 U.S.C. § 542(a). Section 542(b) specifically provides that payment of a "matured, payable on demand or payable on order" debt shall be made to the trustee. 11 U.S.C. § 542(b). The obligation to turn over property to the trustee under Section 542 is self-operative and does not require a motion by the trustee. See In re Randolph Towers Coop., Inc., 458 B.R. 1, 6 (Bankr.D.D.C.2011) (clarifying that a trustee's remedy when an obligor fails to comply with the provision, absent a finding of bad faith, is to sue for enforcement of said provision rather than to seek a contempt order).

The trustee requests that Agriculture and/or the AEDA turn over the $18,102.60 invoiced by the debtor to the RDC on September 11, 2008 for services rendered under the construction agreement. [Adv. Dkt. No. 6.] But, Agriculture moves the court to enter summary judgment dismissing the complaint on two grounds. First, Agriculture argues that an indispensable party is missing because under the Puerto Rico Reorganization Plan Number 4 dated July 29, 2010, all of the contract obligations of the RDC were transferred to the Puerto Rico Land Authority. [Adv. Dkt. No. 92, at pp. 5-6.] Secondly, Agriculture alleges that the debtor has already admitted that it did not perform any of its obligations under the construction agreement and that the RDC never certified or approved payment the invoice in dispute, which was a requirement for payment under the construction agreement.  [Id. at p. 9] Agriculture adds that expenses incurred for policies, taxes, and bonds were the sole obligation of the debtor under the contract. [Id.]

The AEDA does not appear to contest that it is now indeed the responsible party for the contract obligations of the RDC. [Adv. Dkt. No. 107, at p. 3.] Rather, it moves the court to dismiss the complaint also alleging that the debtor never performed any construction work or bought any materials in order to do so. [Id. at. p. 2] The AEDA also alleges that it was the debtor who informed that it would not go forward with the construction project since it was uncertain that the AEDA could pay the construction given that 2008 was an election year in Puerto Rico. [Id. at p. 4.] And, that after said cancellation, the debtor sent the September 11, 2008 invoice, but never sought from the RDC the certification and approval for its payment. [Id.] But, the AEDA did not submit any document in support its allegation that the debtor was responsible for the cancellation of the agreement.

The trustee opposes Agriculture's motion for summary judgment arguing that when the facts occurred, the RDC was a part and under the control of Agriculture, and that the Puerto Rico Reorganization Plan Number 4 dated July 29, 2010 cannot be applied retroactively in order to shield Agriculture from its responsibility under the contract. [Adv. Dkt. No. 108, at p. 5.] The trustee also argues that the debtor performed its obligation under the contract because it obtained the required insurance policies and bonds and paid the municipal taxes in order to begin the construction work. [Id. at. 8.] But, that the debtor was unable to finish the work because the defendants cancelled the contract on September 8, 2008. [Id. at 9.] The trustee submits a transmittal letter sent by the RDC to the debtor dated September 8, 2008, whereby copies of the "beginning and termination letter and copy of the [construction] contract" were being sent to the debtor. [Transmittal letter, Adv. Dkt. No. 109-3; Certified Translation, Adv. Dkt. No. 115, p. 14.] The trustee also submits the debtor's answer to the

defendants' first set of interrogatories whereby the debtor affirms that the contract was cancelled because the Municipality of Isabela never prepared the land so that the construction work could begin. [Answer to the defendants' first set of interrogatories at ¶¶11-14, Adv. Dkt. No. 109-5.]

Although the attachments, if any exist, to the transmittal letter sent by the RDC to the debtor were not included with the copy of the letter, the letter alone is enough to raise an issue of material fact as to whether the RDC was the party responsible for the cancellation of the agreement. More so when the AEDA has also alleged that it was the debtor that decided to terminate the agreement [Adv. Dkt. No. 107, at p. 5.] This issue of material fact prevents the court from entering summary judgment in favor of Agriculture and the AEDA.

The trustee argues that if the RDC cancelled the construction contract the debtor could be entitled to indemnification of all the expenses incurred in its effort to comply with the contract, including those for permits, insurance, and bonds. See, Article 1486 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 4127 ("[t]he owner [of a construction project] may desist, by his own will, from the construction of the work, even when it has been begun, indemnifying the contractor for all the expenses, labor, and profits which he may have obtained from the same.") The court notes that neither Agriculture nor the AEDA have addressed whether the debtor could be entitled to any indemnification under Article 1486.

Lastly, the court now turns to the trustee's request to amend the complaint. The trustee alleges that as a result of discovery she obtained new evidence regarding the cancellation of the contract and the expenses incurred by the debtor to comply with the contract, which were included in the invoice. [Adv. Dkt. No. 97, at p. 2.] AEDA and Agriculture oppose the

10

amendment due to the advanced stage of the proceedings and the lack of diligence by the trustee. [Adv. Dkt. Nos. 107 & 126.]  Amendment of complaints is governed by Rule 15(a), applicable to adversary proceedings pursuant to Bankruptcy Rule 7015. Courts should freely give a party leave to amend the complaint "when justice so requires." See, Fed. R. Civ. P. 15(a)(2).  The "court may deny leave to amend when the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" Nikitine v. Wilmington Trust Co., 715 F.3d 388, 390 (1st Cir. 2013) (citing Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)).  The court is aware that the trustee's motion for leave to amend complaint comes at an advanced stage of the proceedings, but the trustee alone cannot be held responsible for the delay.  All of the parties to this case requested on multiple occasions extensions of time to conclude discovery. [Adv. Dkt. Nos. 72, 76, 80, 82, 85, & 86.] As a result of these extensions, the deadline to conclude discovery was May 26, 2015.  The trustee moved to amend her complaint on July 7, 2015.  As such, there is no undue delay on the part of the trustee and as the matter of the cancellation of the contract is pivotal to the outcome of this case,  justice requires that the trustee be given the opportunity to amend the complaint.

**VI. CONCLUSION**

The court finds that there are genuine issues of material fact which prevent the entry of summary judgment dismissing the complaint. Thus, the Department of Agriculture's motion for summary judgment [at Adv. Dkt. Nos. 92 & 93] and the Agricultural Enterprises Development Administration's motion to dismiss [at Adv. Dkt. No. 107] are hereby denied. And for the reasons stated above, the trustee's motion for leave to file an amended complaint [at Adv. Dkt. No. 97] is hereby granted.

11

SO ORDERED.

In Ponce, Puerto Rico, this 27th day of September, 2016.

Edward A. Godoy
U.S. Bankruptcy Judge